No. 14-56374

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**KEVIN ZIOBER,**
*Plaintiff-Appellant*

v.

**BLB RESOURCES, INC.,**
*Defendant-Appellee*

## APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC

PETER ROMER-FRIEDMAN
OUTTEN & GOLDEN LLP
718 7th Street NW
Washington, DC 20001
Tel: (202) 770-7886
prf@outtengolden.com

THOMAS G. JARRARD
LAW OFFICE OF
THOMAS JARRARD PLLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
tjarrard@att.net

KATHRYN S. PISCITELLI
Attorney at Law
P.O. Box 691166
Orlando, FL 32869-1166
Tel: (407) 491-0143
kpiscitelli1@cfl.rr.com

R. JOSEPH BARTON
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. Suite 500
Washington, DC 20005
Tel: (202) 408-4600
jbarton@cohenmilstein.com

*Attorneys for Appellant Kevin Ziober*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF COUNSEL .................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .................................2

THE PARTIES' ARGUMENTS ..............................................................3

THE PANEL'S OPINION AND JUDGE WATFORD'S CONCURRENCE .........5

ARGUMENT ........................................................................................8

A.  The Panel Wrongly Decided an Exceptionally Important Issue:
    Can Veterans and Servicemembers Be Forced to Waive Their
    Procedural Rights Under USERRA and Arbitrate Their
    USERRA Claims ..........................................................................8

B.  USERRA Codifies Longstanding Rules Barring Waiver of All
    Reemployment Rights and a Liberal Interpretive Canon, and
    Creates Distinctly Federal Procedural Enforcement Rights .............9

C.  The Panel's Opinion Disregards USERRA's Text and Clear
    Legislative History, and the Department of Labor's Interpretation .............11

D.  The Panel's Refusal to Apply a Liberal Canon to Procedural Issues
    Violates Longstanding Supreme Court and Ninth Circuit Precedents .........15

E.  The Panel's Distinction Between Union and Nonunion Arbitration
    Conflicts With Two Distinct Lines of Supreme Court Cases .......................17

CONCLUSION ....................................................................................19

## TABLE OF AUTHORITIES

CASES                                                              PAGE(S)

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)..................................................................2, 11, 17, 19

*Ala. Power Co. v. Davis*,
    431 U.S. 581 (1977)......................................................................9, 10, 16

*Ali v. Federal Bureau of Prisons*,
    552 U.S. 214 (2008)................................................................................13

*Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*,
    567 F.3d 1043 (9th Cir. 2009) ..............................................................18

*Bhd. of Locomotive Eng'rs v. Burlington N. R.R. Co.*,
    838 F.2d 1102 (9th Cir. 1988) ..............................................................18

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012)............................................................................13

*Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*,
    491 U.S. 299 (1989)........................................................................18, 19

*Fishgold v. Sullivan Drydock & Repair Corp.*,
    328 U.S. 275 (1946)....................................................................1, 10, 16

*Garrett v. Circuit City Stores, Inc.*,
    449 F.3d 672 (5th Cir. 2006) ..................................................................5

*Imel v. Laborers Pension Trust Fund for N. Cal.*,
    904 F.2d 1327 (9th Cir. 1990) ........................................1, 6, 10, 16

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v.*
    *S. Pac. Transp. Co.*,
    626 F.2d 715 (9th Cir. 1980) ................................................................18

*King v. St. Vincent's Hosp.*,
    502 U.S. 215 (1991)................................................................................10

*Landis v. Pinnacle Eye Care, LLC*,
    537 F.3d 559 (6th. Cir. 2008) ............................................................5, 12

iii

*McKinney v. Missouri-Kan.-Tex. R.R. Co.*,
357 U.S. 265 (1958)................................................................8, 10, 11, 18

*Ordlock v. Comm'r of Internal Revenue*,
533 F.3d 1136 (9th Cir. 2008) ...........................................................15

*Russell v. MSPB*,
324 F. App'x 872 (Fed. Cir. 2008) .............................................1, 4, 9, 12

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F.3d 727 (9th Cir. 2006) ..............................................................19

*Tsang v. Kan*,
173 F.2d 204 (9th Cir. 1949) .......................................................1, 6, 16

## STATUTES

9 U.S.C. § 2 .................................................................................14, 19

9 U.S.C. § 3 .................................................................................14, 19

9 U.S.C. § 4 .................................................................................14, 19

9 U.S.C. § 9 .................................................................................14, 19

38 U.S.C. § 4302 ...........................................................................*passim*

38 U.S.C. § 4303 ...............................................................................13

38 U.S.C. § 4316 ...............................................................................13

38 U.S.C. § 4323 .................................................................................3

38 U.S.C. § 4327 ...............................................................................13

Pub. L. No. 103-353, 108 Stat. 3149 (1994).........................................10

## OTHER AUTHORITIES

70 Fed. Reg. 75246, 75257 (Dec. 19, 2005).........................................4

H.R. Rep. No. 103-65 (1993)...............................................................4

S. Rep. No. 103-158 (1993) ...............................................................10

iv

## INTRODUCTION

Appellant petitions for panel rehearing and rehearing en banc of the published opinion in *Ziober v. BLB Resources, Inc.*, No. 14 Civ. 56374, --F.3d-- (9th Cir. 2016) ("Slip Op.").

## STATEMENT OF COUNSEL

In the judgment of the undersigned counsel, the following issues warrant en banc and panel rehearing.

1.      The panel's opinion raises an exceptionally important issue of whether the Uniformed Services Employment and Reemployment Rights Act ("USERRA") prohibits waiver of veterans' procedural rights under USERRA and, thus, bans forced arbitration of USERRA claims. The panel's holding that veterans *can* be forced to arbitrate their USERRA claims conflicts with the Federal Circuit's contrary holding in *Russell v. MSPB*, 324 F. App'x 872, 874-75 (Fed. Cir. 2008).

2.      The panel's holding that the canon of liberally construing USERRA does not apply to procedural issues conflicts with prior Supreme Court and Ninth Circuit cases holding the entire reemployment rights law must be liberally construed, including on procedural and jurisdictional issues. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946); *Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327 (9th Cir. 1990); *Tsang v. Kan*, 173 F.2d 204 (9th Cir. 1949).

1

3.     The panel's holding treating union and nonunion arbitration agreements differently under USERRA by protecting only union workers conflicts with the Supreme Court's holding that union and nonunion arbitration are treated the same under the Federal Arbitration Act ("FAA"), *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), and numerous Supreme Court and Ninth Circuit decisions holding Railway Labor Act-mandated union arbitration is binding and subject to narrow judicial review, just like nonunion arbitration under the FAA.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On November 30, 2012, Appellant Lieutenant Kevin Ziober ("Ziober") celebrated his last day of work before a one-year deployment to Afghanistan. Excerpts of Record ("ER") 6. On that last day, his employer, BLB Resources, Inc. ("BLB"), held a farewell party for Ziober.  ER 6.  But several hours later, BLB fired Ziober in violation of USERRA.  ER 6, 10-14. On April 30, 2014, after returning from Afghanistan, Ziober filed a USERRA action in federal court. ER 10-14.  BLB moved to compel arbitration under an agreement Ziober signed as a condition of employment, and the district court granted BLB's motion, holding USERRA claims may be compelled into arbitration.  ER 28-38, 108-09, 136-46.

## THE PARTIES' ARGUMENTS

On appeal, Ziober argued USERRA's anti-waiver provision, 38 U.S.C. § 4302(b), bars waiver of procedural and substantive rights and thus voids an arbitration agreement that eliminates his procedural right to file a federal court USERRA action under § 4323. He offered three compelling arguments why USERRA invalidates any waiver of procedural rights and bars forced arbitration, based on USERRA's statutory text, legislative history, and the Department of Labor's ("DOL") interpretation. Opening Br. at 27-60; Reply Br. at 13-30.

First, USERRA's expansive anti-waiver provision states that USERRA "supersedes *any*" "contract [or] agreement" that "reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right[.]" 38 U.S.C. § 4302(b) (emphasis added). This and other statutory text confirm that "any right" that cannot be waived *includes* procedural rights, such as the right to file a federal lawsuit. There is no dispute that BLB's arbitration agreement eliminates Ziober's procedural "right" to file a USERRA action in court. *Id.* § 4323(a)(3), (b)(3); *id.* § 4327(a)(1)(B)(i) (describing "the right of a person [] to commence an action under section 4323"). Thus, § 4302(b) voids an arbitration "agreement" that "eliminates" a veteran's procedural "right" to file a court action. *Id.* § 4302(b).

3

Second, USERRA's legislative history makes clear that procedural rights cannot be waived and arbitration of USERRA claims cannot be compelled. Congress stated § 4302(b) would "reaffirm that additional resort to mechanisms such as . . . arbitration . . . is not required," and "even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law," H.R. Rep. No. 103-65, at 20 (1993) ("House Report")—principles antithetical to the FAA. In establishing these rules, Congress stated its intent to codify a Supreme Court decision that held veterans cannot be forced to arbitrate claims under a predecessor statute of USERRA, *id.* (citing *McKinney v. Missouri-Kan.-Tex. R.R. Co.*, 357 U.S. 265, 270 (1958), and also cited a decision that held anti-waiver principles apply equally to union and nonunion workers. *Id.* (citing *Leonard v. United Airlines, Inc*., 972 F.2d 155, 159 (7th Cir. 1992)).

*Third*, Ziober argued this Court should give *Chevron* deference to DOL's reasonable interpretation, in a final rule, that § 4302(b) bans forced arbitration. 70 Fed. Reg. 75246, 75257 (Dec. 19, 2005).

Ziober urged this Court to follow the Federal Circuit's holding that USERRA's plain language and legislative history show Congress intended § 4302(b) to bar waiver of procedural rights and void agreements that mandate resolution of USERRA disputes through arbitration, *Russell v. MSPB*, 324 F. App'x 872, 874-75 (Fed. Cir. 2008) (per curiam), and to reject Fifth and Sixth

4

Circuit opinions that erroneously reached the opposite conclusion in *Garrett v. Circuit City Stores, Inc*., 449 F.3d 672, 674-76 (5th Cir. 2006), and *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561-63 (6th. Cir. 2008).

BLB offered two arguments: first, this Court should focus only on USERRA's text, which does not clearly reveal intent to bar arbitration as it does not expressly refer to "arbitration"; and second, USERRA's history suggests Congress only intended to protect unionized workers from arbitration.

## THE PANEL'S OPINION AND JUDGE WATFORD'S CONCURRENCE

On October 14, 2016, the panel issued an opinion holding § 4302(b) does not bar forced arbitration of a nonunion, individual worker's USERRA claims. Slip Op. at 7-15. Judge Watford filed a concurring opinion expressing "doubts about whether [the panel is] reaching the right result," and explaining how "[a] strong argument can be made that [USERRA] contains a 'contrary congressional command' overriding the [FAA's] pro-arbitration mandate." *Id.* at 15 (Watford, J., concurring) ("Concur. Op.").

The panel held USERRA's text is not clear enough to find a contrary congressional command to override FAA arbitration, as USERRA's text does not mention the word "arbitration," *id.* at 10, and USERRA's text and legislative history suggest "Congress's concern was with" union arbitration agreements that

5

require employees to invoke "grievance procedures[] before bringing suit," rather than "individual agreements to arbitrate" with nonunion workers.  *Id.* at 13-14.

To reach these conclusions, the panel held that *McKinney*—which ruled a veteran's federal reemployment claim cannot be compelled into arbitration under the Railway Labor Act ("RLA")—"did not address arbitration agreements that operate similar to forum selection clauses like the one at issue in this case," *id.* at 14, where a plaintiff "bring[s] a claim in arbitration . . . to vindicate her substantive statutory rights to the same extent as filing a lawsuit in federal court."  *Id.* (citation omitted).   As explained below, the panel's view of how RLA-mandated union arbitration operated in *McKinney* is contrary to Supreme Court and Ninth Circuit precedent that RLA-mandated arbitration is binding, conclusive and cannot be set aside except for limited reasons—just like binding, nonunion individual arbitration under the FAA.  *Infra* at 18-19.

Also, in construing procedural rights under USERRA, the panel refused to apply the longstanding canon that veterans' reemployment laws must be liberally construed for the benefit of veterans.  *Id.* at 11. Yet this Court previously held the liberal canon applies to jurisdictional and procedural issues.  *Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327, 1331 (9th Cir. 1990); *Tsang v. Kan*, 173 F.2d 204, 205 (9th Cir. 1949); *infra* at 15-16.

6

In his concurrence, Judge Watford recognized Ziober's "strong argument" that USERRA *does* reveal Congress' intent to ban forced arbitration. Concur. Op. at 15-16. Judge Watford agreed with Ziober that § 4302(b) "renders unenforceable any contract or agreement that 'reduces, limits, or eliminates in any manner any right . . . provided by this chapter'"; that Ziober's arbitration agreement "certainly 'limits'—and for all practical purposes 'eliminates'—his right to litigate those claims in court," *id.* (quoting 38 U.S.C. § 4302(b)); and USERRA "seems to confer such a right" since "Section 4323 authorizes servicemembers to 'commence an action for relief' against a private employer . . . [in federal] district courts[.]'" *Id.* at 16 (quoting 38 U.S.C. § 4323(a)(3), (b)(3)). He also noted that in contrast to federal laws the Supreme Court has held to *not* override the FAA, "USERRA is different because it contains *both* a non-waiver provision (§ 4302(b)) and a provision conferring the right to bring an action in court." *Id.* at 16-17.

Finally, he recognized that "the agency charged with administering USERRA [DOL], has read § 4302(b) as including 'a prohibition against a waiver in an arbitration agreement of an employee's right to bring a USERRA suit in Federal court,'" *id.* at 17 (quoting 70 Fed. Reg. at 75257), and "[t]hat reading is consistent with a long line of authority holding that legislation benefitting servicemembers is to be liberally construed in their favor." *Id.* (citations omitted).

## ARGUMENT

### A. The Panel Wrongly Decided an Exceptionally Important Issue: Can Veterans and Servicemembers Be Forced to Waive Their Procedural Rights Under USERRA and Arbitrate Their USERRA Claims

En banc or panel rehearing is both warranted and necessary. It is exceptionally important to protect millions of servicemembers and veterans from waiving their USERRA rights, which are critical to manning our Armed Forces.

Regrettably, in holding that USERRA § 4302(b) does not bar forced arbitration for nonunion workers, the panel: (1) disregards 70-plus years of Supreme Court and Ninth Circuit cases protecting servicemembers' rights; (2) ignores Congress' clearly stated intent that *all* USERRA rights cannot be waived and arbitration cannot be compelled; and (3) allows employers to eliminate *all* the "distinctively federal" procedural enforcement rights Congress conferred on those who answer the call of duty. *McKinney*, 357 U.S. at 268-69 & n.1.

Emphasizing the importance of this issue, over 30 veteran and servicemember advocacy organizations recently stated it is "important" "to guarantee that the men and women in our nation's Uniformed Services can exercise the [USERRA] rights Congress has intended them to have," namely the right to be free of forced arbitration. Military Coalition Letter (June 28, 2016), http://www.themilitarycoalition.org/uploads/4/7/6/9/47692523/tmc_userra_letter_june_2016__assns_.pdf.

8

Rehearing is particularly warranted as the panel's opinion is directly at odds with the Federal Circuit's holding—which applies to federal employees—that veterans cannot waive their right to file a USERRA action. *Russell*, 324 F. App'x at 874-75. Under *Russell*, federal employees (including those employed within the Ninth Circuit) cannot be compelled to arbitrate their USERRA claims, but under the panel's opinion private sector workers in this Circuit can be compelled to arbitrate their USERRA claims. For a federal law intended to encourage participation in our national military, having two different rules for federal and private sector workers is problematic.

**B. <u>USERRA Codifies Longstanding Rules Barring Waiver of All Reemployment Rights and a Liberal Interpretive Canon, and Creates Distinctly Federal Procedural Enforcement Rights</u>**

USERRA and its predecessor laws—dating back over 70 years—are not merely employment laws that protect servicemembers and veterans from bias due to military service or status. By guaranteeing that servicemembers can take military leave from civilian jobs and be reemployed after serving, these laws "provide[] the mechanism for manning the Armed Forces of the United States." *Ala. Power Co. v. Davis*, 431 U.S. 581, 583 (1977). As this Court observed, "[t]he purpose" of these laws "is to ensure that the veteran 'who was called to the colors not be penalized on his return by reason of his absence from his civilian job.'"

9

*Imel*, 904 F.2d at 1331 (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946)).

In interpreting federal reemployment laws for 70-plus years, the Supreme Court has steadfastly championed two fundamental rules: (1) servicemembers cannot waive their substantive *or* procedural rights, *McKinney*, 357 U.S. at 268-70 (employer cannot compel arbitration of reemployment claim); *Fishgold*, 328 U.S. at 285 (employer practices cannot "cut down" reemployment rights); and (2) the "guiding principle" of liberal construction "govern[s] all subsequent interpretations of the re-employment rights of veterans." *Ala. Power*, 431 U.S. at 584; *accord King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991) (any doubt over the law's meaning must be "construed in [the veteran's] favor").

When Congress enacted USERRA to recodify and "improve" reemployment rights, Pub. L. No. 103-353, 108 Stat. 3149, 3150 (1994), it expressly stated these two fundamental rules would apply to USERRA, House Report at 19-20; S. Rep. No. 103-158, at 40-41 (1993) ("Senate Report"), and enacted one of the broadest anti-waiver provisions that voids any contract or agreement that "reduces, limits, or eliminates in any manner any right [] provided by [USERRA][.]" 38 U.S.C. § 4302(b). To fully protect servicemembers' substantive rights and ensure effective federal court enforcement, Congress enacted some of the most powerful procedural enforcement protections that exist under any federal law, such as:

(A) authorizing USERRA actions in *any* federal court where an employer "maintains a place of business," *id.* § 4323(c)(2);

(B) "no limit on the period for filing [a] complaint," *id.* § 4327(b);

(C) no mandate to exhaust or file a charge before filing suit, *id.* § 4323(a)(3);

(D) a bar on plaintiffs paying filing fees or employers' fees/costs, *id.* § 4323(h)(1); and

(E) mandating that federal courts "shall use" their "full equity powers []
to vindicate fully [USERRA] rights[.]" *Id.* § 4323(e).

The Supreme Court identified several of these procedural rights—including the

right to sue in any "district court" where the employer has "a place of business"

and the right to not be taxed fees or costs—as critical to "the effective protection of

these distinctively federal rights," but rights that arbitration eliminates. *McKinney*,

357 U.S. at 269 & n.1.

## C. The Panel's Opinion Disregards USERRA's Text and Clear Legislative History, and the Department of Labor's Interpretation

It is well established that if Congress intends to bar waiver of "the right to a

judicial forum, that intention will be deducible from the text or legislative history."

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (citation and quotations

omitted). Ziober has advanced compelling arguments why USERRA's text and

legislative history show Congress intended to bar waiver of substantive *and*

procedural rights and to bar forced arbitration of USERRA claims. Judge

Watford's concurrence recognizes the strength of these arguments, as well as a

11

critical argument the panel ignored—that DOL, "the agency charged with administering USERRA," interpreted § 4302(b) to bar waiver of procedural rights and forced arbitration. Concur. Op. at 17. His concurrence echoes the Federal Circuit's holding that USERRA protects procedural rights from waiver, *Russell*, 324 F. App'x at 874-75, and Judge Cole's concurrence in *Landis* that "Congress clearly meant to stop employers from requiring . . . 'arbitration'" and "to include arbitration as an 'additional prerequisite'" that cannot be required. 537 F.3d at 564 (Cole, J., concurring) (quoting House Report at 20, and 38 U.S. § 4302(b)).

The panel's opinion fails to grapple with § 4302(b)'s text beyond its final phrase "including the establishment of additional prerequisites to the exercise of any such right." 38 U.S.C. § 4302(b). Solely analyzing this clause, the panel held in some cases USERRA bars arbitration from taking away procedural rights but not in others, as only some types of arbitration are allegedly "prerequisites" to exercising USERRA rights. Slip Op. at 13-14.

But § 4302(b) and other statutory language confirm USERRA's protection of "any right" against waiver includes *any procedural right*. As § 4302(b) bars waiver of "any right," it necessarily protects *all procedural rights* without exempting any rights. The panel's contrary view that some procedural rights can be waived renders § 4302(b)'s "any right" language superfluous, and ignores the Supreme Court's direction that "the word 'any' has an expansive meaning, that is,

12

'one or some indiscriminately of whatever kind," and leaves no basis for limiting the types of things that follow "any." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218-19 (2008) (citations and internal quotations omitted).

It is plain that § 4302(b)'s protection of "any right" from waiver includes procedural rights, including the right to file a federal action, as the singular, generic term "any right or benefit" in § 4302(b) is more expansive than another term of art in USERRA, "rights and benefits," which defines what specific *substantive* rights must be given to a reemployed person. 38 U.S.C. §§ 4303(2), 4316(a). And USERRA refers *in the singular* to the "right of a person . . . to commence an action under section 4323," *id.* § 4327(a)(1)(B), making clear "any right" in § 4302(b) includes the procedural right to file a federal action.

As Judge Watford correctly reasoned, that USERRA "contains both a non-waiver provision" that refers to procedural rights "and a provision conferring the right to bring an action in court" distinguishes USERRA from prior laws where one condition, but not both, was met. Concur Op. 16-17 (noting *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), "held that the statute [before it] did *not* confer the right to bring an action in court," and prior statutes "all involved the reverse situation" where "[e]ach statute conferred the right to bring an action in court, but each lacked a non-waiver provision").

13

Furthermore, USERRA's legislative history could not be clearer that Congress wanted to protect servicemembers from waiving procedural rights or having to arbitrate USERRA claims. Citing *McKinney*, which held servicemembers cannot be required to arbitrate reemployments claims, Congress stated § 4302(b) would "reaffirm that additional resort to mechanisms such as grievance procedures or arbitration . . . is not required," and "even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law[.]" House Report at 20. These two principles—that arbitration cannot be "required" and arbitration awards are not "binding," *id.*, are 100 percent contrary to how the FAA operates (allowing parties to compel arbitration and confirm arbitration awards in court). 9 U.S.C. §§ 2-4, 9.

Contrary to the panel's view, USERRA's legislative history draws no distinction between union or nonunion arbitration, or between arbitration that is preceded by grievance procedures. In fact, in the very same passage describing how USERRA rights cannot be waived and arbitration cannot be compelled, Congress cited with approval a decision that held USERRA's anti-waiver principles apply equally to union and nonunion contracts. House Report at 20 (citing *Leonard*, 972 F.2d at 159 ("That a union cannot contract away the rights of its members under the Act suggests that individual workers cannot waive their

14

rights either.")).[1]  And the RLA-mandated union arbitration at issue in *McKinney* was binding, just like nonunion arbitration under the FAA. *Infra* at 18-19.

Finally, the panel improperly refused to apply the canon of liberally construing USERRA to a procedural issue, Slip Op. at 11, contravening this Court's holdings that the canon applies to non-substantive issues.  *Infra* at 15-16.

### D. <u>The Panel's Refusal to Apply a Liberal Canon to Procedural Issues Violates Longstanding Supreme Court and Ninth Circuit Precedents</u>

In narrowly construing § 4302(b) to permit waiver of procedural rights and forced arbitration, the panel refused to apply the canon of liberally interpreting USERRA based on its holding that this canon only applies to substantive issues, not procedural or jurisdictional issues.

This holding conflicts with two Ninth Circuit decisions holding the liberal canon *does apply* to non-substantive issues (including to decide in which forum an action may be filed), and the "Supreme Court's [] instruction [] 'to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the

---

[1] The panel's discounting the House Report because the Senate Report did not contain a detailed statement on arbitration, Slip Op. at 15 n.3, disregards this Court's holding that a more detailed report will be followed over a more general report where a "Conference report does not acknowledge any difference between the House and Senate bills on the issue." *Ordlock v. Comm'r of Internal Revenue*, 533 F.3d 1136, 1143 (9th Cir. 2008); *see* Opening Br. at 56-57 (explaining joint statement by leaders who negotiated USERRA's final version did not identify differences between House and Senate versions of § 4302(b)).

separate provisions permits.'" *Imel*, 904 F.2d at 1331 (quoting *Fishgold*, 328 U.S. at 285); *Tsang*, 173 F.2d at 205 (same).

Contrary to the panel's holding, *Imel* held this Court's "commitment to a liberal interpretation of the Act extends even to the question of jurisdiction." 904 F.2d at 1331 (applying canon to decide which entities could be sued). And *Tsang* held veterans could file claims "in the nearby state court," not just in a "distant federal court," because "a liberal construction permitting suits by the veteran in the state courts [] would strongly favor him in many cases." 173 F.2d at 205-06. Accordingly, since 1949, the law of this Circuit has required that when deciding *which forum* a veteran's reemployment claim may be filed, the liberal canon applies. *Id.* Since that time, neither this Court nor the Supreme Court has suggested the liberal canon loses its vitality on non-substantive issues.

To reach its erroneous holding, the panel claimed the liberal canon was "designed to ensure that veterans may take full advantage of the substantive rights and protections provided by a statute," but not procedural rights. Slip Op. at 11 (citing *Ala. Power*, 431 U.S. at 585–87). While *Alabama Power* recognized the canon and decided a substantive rights issue, it said nothing about limiting the canon to substantive issues.

**E. The Panel's Distinction Between Union and Nonunion Arbitration Conflicts With Two Distinct Lines of Supreme Court Cases**

At the heart of the panel's holding is a misguided view that § 4302(b) bans forced arbitration of unionized workers' USERRA claims (like the RLA-mandated union arbitration in *McKinney*), but not forced arbitration of nonunion workers' individual USERRA claims. *Id.* at 12-14.

This distinction violates the Supreme Court's holding that to treat union and nonunion arbitration differently under the FAA, Congress must clearly state its intention to do so. *Pyett*, 556 U.S. at 258, 269-71. As *Pyett* explained, nothing in federal law "suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative," union arbitration should not be "singl[ed] out . . . for disfavored treatment," and "Congress is fully equipped to identify any category of claims at to which agreements to arbitrate will be held unenforceable." *Id.* (citation and quotations omitted).

Under *Pyett*, it is improper to interpret USERRA to establish different rules for union and nonunion arbitration. Nothing in USERRA's text or legislative history distinguishes between union and nonunion arbitration, and the House Report refers generically to "arbitration" without mentioning unions or suggesting union arbitration is treated differently. House Report at 20.

17

Furthermore, in drawing the same union/nonunion distinction, the panel held Congress was only concerned about USERRA disputes being arbitrated under the RLA-mandated union arbitration addressed in *McKinney* that allegedly "did not address arbitration agreements that operate similar to forum selection clauses like the [individual] one at issue in this case" where arbitration is a substitute for federal court enforcement. Slip Op. at 14.

But the panel's distinction between RLA-mandated union arbitration and nonunion FAA-mandated arbitration is based on a misunderstanding of RLA arbitration—a misunderstanding that ignores decades of controlling law. It has long been understood that the arbitration at issue in *McKinney*—arbitration required by the RLA and held "before the National Railroad Adjustment Board [NRAB]," *McKinney*, 357 U.S. at 268 (citing 45 U.S.C. § 153)—is binding, conclusive, and cannot be set aside except for very limited reasons. *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303-04 (1989) (NRAB conducts "compulsory and binding arbitration" where "[j]udicial review of the arbitral decision is limited").[2] Accordingly, the basic features of RLA-mandated union

---

[2] *Bhd. of Locomotive Eng'rs v. Burlington N. R.R. Co.*, 838 F.2d 1102, 1111 (9th Cir. 1988) (NRAB "peform[s]" "compulsory and binding arbitration"); *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. S. Pac. Transp. Co.*, 626 F.2d 715, 717 (9th Cir. 1980) ("[A] federal district court's review of an award by the [NRAB] has been described as among the narrowest known to the law.") (citation and quotations omitted); *see also Ass'n of Flight Attendants v. Mesa Air*

arbitration and FAA-mandated nonunion arbitration—arbitration is binding and cannot be vacated except in narrow circumstances—are exactly the same. *See* 9 U.S.C. §§ 2-4, 9. Indeed, federal courts apply the same doctrinal standards to union and nonunion arbitration under the FAA. *See Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 731 (9th Cir. 2006).

As the panel's artificial distinction between union and nonunion arbitration contravenes decades of controlling law, as well as the Supreme Court's recent decision in *Pyett*, en banc review is necessary.

## **<u>CONCLUSION</u>**

For the reasons stated above, Ziober's petition should be granted.

Respectfully submitted,                                November 4, 2016

*/ s / Peter Romer-Friedman*
PETER ROMER-FRIEDMAN                      KATHRYN S. PISCITELLI
OUTTEN & GOLDEN LLP                          Attorney at Law
718 7th Street NW                                    P.O. Box 691166
Washington, DC 20001                             Orlando, FL 32869-1166
Tel: (202) 770-7886                                  Tel: (407) 491-0143
prf@outtengolden.com                             kpiscitelli1@cfl.rr.com


THOMAS G. JARRARD                             R. JOSEPH BARTON
LAW OFFICE OF                                       COHEN MILSTEIN SELLERS
THOMAS JARRARD PLLC                        & TOLL PLLC
1020 N. Washington St.                            1100 New York Ave. Suite 500
Spokane, WA 99201                                 Washington, DC 20005
Tel: (425) 239-7290                                  Tel: (202) 408-4600

---

*Grp., Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009) ("arbitration before the [NRAB] is "exclusive [and] binding") (citing *Consol. Rail Corp.*, 491 U.S. at 303-04).

tjarrard@att.net                                              jbarton@cohenmilstein.com

*Attorneys for Appellant Kevin Ziober*

**Form 11.**     **Certificate of Compliance Pursuant to**
                 **Circuit Rules 35-4 and 40-1**

---

**Form Must be Signed by Attorney or Unrepresented Litigant**
**and Attached to the Back of Each Copy of the Petition or Answer**

---

**(signature block below)**

---

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

__X__   Proportionately spaced, has a typeface of 14 points or more and contains __4,200__ words (petitions and answers must not exceed 4,200 words).

**or**

____    Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

____    In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

/ s / Peter Romer-Friedman
_____
Signature of Attorney or
Unrepresented Litigant

**(New Form 7/1/2000)**

# Attachment

*Ziober v. BLB Resources, Inc.*, --- F.3d --- (9th Cir. 2016)

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN ZIOBER, an individual,<br>　　　　*Plaintiff-Appellant*,<br><br>　　　　　　v.<br><br>BLB RESOURCES, INC., a California Corporation,<br>　　　　*Defendant-Appellee.* | No. 14-56374<br><br>D.C. No.<br>8:14-cv-00675-CJC-DFM<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted July 5, 2016
Pasadena, California

Filed October 14, 2016

Before: Mary H. Murguia and Paul J. Watford, Circuit
Judges, and Susan R. Bolton,[*] District Judge.

Opinion by Judge Murguia;
Concurrence by Judge Watford

---

[*] The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

## SUMMARY[**]

### Arbitration / Labor Law

The panel affirmed the district court's order compelling arbitration and dismissing an action under the Uniformed Services Employment and Reemployment Rights Act.

Joining other circuits, the panel held that USERRA does not prohibit the compelled arbitration of claims arising under its provisions, which establish employment rights for returning servicemembers. The panel concluded that neither the text nor the legislative history of USERRA evinced Congressional intent to override the Federal Arbitration Act's mandate that courts rigorously enforce arbitration agreements according to their terms.

Concurring, Judge Watford wrote that while the proper interpretation of USERRA was open to debate, it was not prudent to create a circuit split by reversing the district court's ruling.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Peter Romer-Friedman (argued) and R. Joseph Barton, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; Kathryn S. Piscitelli, Orlando, Florida; Thomas G. Jarrard, Law Office of Thomas Jarrard, PLLC, Spokane, Washington; for Plaintiff-Appellant.

Lonnie D. Giamela (argued), Jimmie E. Johnson, and Nathan V. Okelberry, Fisher & Phillips LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

MURGUIA, Circuit Judge:

The plaintiff, Kevin Ziober, signed an agreement with his employer requiring the arbitration of legal disputes. Ziober later sued the employer, claiming that he was fired from his job after providing notice of his deployment to Afghanistan in the United States Navy Reserve. The lawsuit alleged violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), which establishes employment rights for returning servicemembers. This case presents the question of whether USERRA prohibits the compelled arbitration of claims arising under its provisions. We join the other circuits to have considered the question and conclude that USERRA contains no such prohibition. We therefore affirm the district court's order compelling arbitration and dismissing Ziober's complaint.

4                    ZIOBER V. BLB RESOURCES

I.

The facts, as alleged in the underlying complaint, are not in dispute for purposes of this appeal. Ziober served in the United States Navy Reserve and worked in his civilian life as an operations director for defendant BLB Resources, Inc., a real estate marketing and management firm. Approximately six months after joining the company, Ziober signed a bilateral arbitration agreement. The agreement stated:

> To the fullest extent allowed by law, any controversy, claim or dispute between Employee and the Company . . . relating to or arising out of Employee's employment or the cessation of that employment will be submitted to final and binding arbitration before a neutral arbitrator . . . for determination in accordance with the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures (excluding mediation), including any subsequent modifications or amendments to such Rules, as the exclusive remedy for such controversy, claim or dispute.

Under the agreement, the company agreed to pay all arbitration costs. The agreement further specified that the scope of discovery and available remedies would be the same in arbitration as they would be in court.

Ziober subsequently told the company that the Navy was recalling him to active duty in Afghanistan. On Ziober's last scheduled day of work, the company informed him that he would not have a job upon his return to civilian life.

In April 2014, after returning from Afghanistan, Ziober sued his former employer for violating USERRA's provisions protecting servicemembers against discrimination and establishing reemployment rights. The complaint also includes various state law claims, including claims for wrongful termination and violations of a state statute protecting servicemembers against discrimination. The employer moved to compel arbitration pursuant to the agreement Ziober had signed. The district court granted the defendant's motion after concluding that USERRA did not invalidate or supersede the arbitration agreement. This appeal followed.

II.

We have jurisdiction under 9 U.S.C. § 16(a)(3) to review the district court's order compelling arbitration and dismissing Ziober's complaint. We review the district court's order de novo. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

III.

Our analysis begins with more than three decades of Supreme Court precedent recognizing the "liberal federal policy favoring arbitration agreements," as established by the Federal Arbitration Act (FAA). *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012). That pro-arbitration policy extends to arbitration agreements in the employment contracts of non-transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). The FAA requires courts to "'rigorously enforce' arbitration agreements according to

their terms," including agreements to arbitrate claims arising under federal statutes. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see also CompuCredit*, 132 S.Ct. at 669. Section 3 of the FAA specifically directs federal district courts to stay proceedings and compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

An exception to the FAA's arbitration mandate exists when the mandate "has been 'overridden by a contrary congressional command.'" *CompuCredit*, 132 S.Ct. at 669 (quoting *Shearson/Am. Express Inc. v McMahon*, 482 U.S. 220, 226 (1987)). The burden rests on the party challenging arbitration "to show that Congress intended to preclude a waiver of a judicial forum" for the claims at issue. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Such congressional intent "will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.* at 26 (internal quotation marks omitted); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009).

In this case, Ziober argues that the plain text and legislative history of USERRA reveal that Congress intended to preclude the compelled arbitration of claims arising under its provisions. We join our sister circuits to have considered the question and conclude that neither the text nor legislative history evinces that intent. *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559 (6th Cir. 2008); *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672 (5th Cir. 2006); *see also Bodine v. Cook's Pest Control, Inc.*, No. 15-13233, 2016 WL 4056031 (11th Cir. July 29, 2016) (holding that a USERRA claim was

arbitrable even where the underlying arbitration agreement contained terms that violated the statute because those terms could be severed from the remainder of the agreement).

A.

Some historical context helps frame the discussion of USERRA's provisions. By the time Congress passed USERRA in 1994, the FAA had been in place for nearly seventy years, and the Supreme Court had made clear that "a contrary congressional command" was required to override the FAA's pro-arbitration mandate. *McMahon*, 482 U.S. at 226. Three years before USERRA's passage, the Supreme Court further held that an age discrimination claim arising under the Age Discrimination in Employment Act of 1967 could be subject to compelled arbitration. *Gilmer*, 500 U.S. at 23. Arbitration agreements in employment contracts were not uncommon at the time. *See, e.g., Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1066–67 (2d Cir. 1972); *Dickstein v. duPont*, 443 F.2d 783, 784–85 (1st Cir. 1971).

Against that backdrop, Congress passed USERRA to broadly prohibit employment discrimination against, and to establish reemployment rights on behalf of, those who serve in the military and then reenter civilian life. *See* 38 U.S.C. §§ 4301–4334. Central to this appeal, 38 U.S.C. § 4302(b) provides:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of

> additional prerequisites to the exercise of any
> such right or the receipt of any such benefit.

An individual may enforce his or her substantive rights
against a private employer in one of two ways. 38 U.S.C.
§§ 4322, 4323. First, an individual may file a complaint with
the Secretary of Labor and request that the Secretary refer the
matter to the Attorney General for further prosecution. *Id.*
§§ 4322, 4323(a)(1). Second, an individual may directly
pursue a civil action in federal court. *Id.* § 4323(a)(3).[1]
Section 4323 gives district courts jurisdiction over USERRA
claims, and it specifies the venue in which actions may
proceed. *Id.* § 4323(b), (c).

Taken together, Ziober argues that those statutory
provisions create a procedural right to sue in federal court
that precludes a contractual agreement to arbitrate. We
disagree. As an initial matter, it is well established that "[b]y
agreeing to arbitrate a statutory claim, a party does not forgo
the substantive rights afforded by the statute; it only submits
to their resolution in an arbitral, rather than a judicial, forum."
*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 628 (1985); *see also Circuit City*, 532 U.S. at
123. Ziober therefore loses no substantive protections by
arbitrating his claims, and the only way he can prevail is if
USERRA creates a procedural right to a judicial forum,
protected by § 4302(b).

---

[1] We do not reach the question of how the arbitration agreement in
this case would have affected any claims brought by the Attorney General
pursuant to § 4323(a)(1). *See EEOC v. Waffle House, Inc.*, 534 U.S. 279,
295–96 (2002) (holding that the EEOC retained "the authority to pursue
victim-specific [judicial] relief regardless of the forum that the employer
and employee have chosen to resolve their disputes").

The Supreme Court's decision in *CompuCredit* forecloses the argument that USERRA includes a non-waivable procedural right to a judicial forum. In *CompuCredit*, the Court enforced a consumer agreement to arbitrate claims arising under the Credit Repair Organizations Act (CROA),which, similar to USERRA, prohibited the waiver of "any right of the consumer" under the Act. 132 S.Ct. at 669. Unlike USERRA, CROA explicitly provided that a consumer had "a right to sue" a credit repair organization. *Id.* Like USERRA, CROA included a section that created civil liability and described available relief in the context of a lawsuit in court. *Id.* at 670; *see also* 15 U.S.C. § 1679g (CROA's civil liability provisions). Despite the statute's seeming contemplation of a judicial forum for claims, the Supreme Court rejected the argument that CROA created a procedural right to bring a lawsuit in court. As the Court reasoned, "[i]f the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed." 132 S.Ct. at 670 (citation omitted).

The Court in *CompuCredit* also looked to prior instances when it had enforced arbitration agreements despite a statute's contemplation of a judicial forum for suits. In *Gilmer*, for instance, the Supreme Court enforced an arbitration agreement with respect to a claim brought under the Age Discrimination in Employment Act (ADEA), even though the statute provided that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." *CompuCredit*, 132 S.Ct. at 670; *see also* 29 U.S.C. § 626(c)(1). Before *Gilmer*, the Supreme Court also repeatedly enforced arbitration agreements when the

federal statute at issue created a cause of action in federal courts without mentioning agreements to arbitrate. *See CompuCredit*, 132 S.Ct. at 670–71 (discussing cases); *McMahon*, 482 U.S. at 227–28. In *CompuCredit*, the Court reaffirmed that such statutory provisions do not create a right to judicial enforcement of a claim. 132 S.Ct. at 671.

The same conclusion applies here. Like CROA, nothing in the plain text of USERRA "mentions mandatory arbitration or the FAA." *Landis*, 537 F.3d at 559. Instead, the statute describes civil liability in a standard fashion similar to the statutes considered in *CompuCredit*. As the Supreme Court remarked in *CompuCredit*, when Congress has issued a command precluding the arbitration of claims, it has done so in far more unmistakable terms. *See* 132 S.Ct. at 672 (citing 7 U.S.C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); 15 U.S.C. § 1226(a)(2) ("Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.")). Congress made no similarly plain statement in USERRA's text.

The closest that USERRA's text comes to addressing the compelled arbitration of claims is in § 4323(b)'s prohibition of "the establishment of additional prerequisites" to the vindication of substantive rights. However, as other circuits have recognized, that language directly relates to "union contracts and collective bargaining agreements" that require an employee to take an additional step or exhaust certain

remedies before filing suit. *Garrett*, 449 F.3d at 680; *see also Landis*, 537 F.3d at 564 (Cole, J., concurring) (concluding that Congress did not want USERRA plaintiffs to be forced "to submit to arbitration, mediation, or any grievance procedure as a *prerequisite to* filing suit in federal court"). But an individual arbitration agreement between an employer and an employee—operating like a forum selection clause—allows an employee to immediately seek to vindicate his or her rights in an arbitral forum, with no additional steps or exhaustion of other remedies required.

Ziober also argues that USERRA should be interpreted more liberally than other statutes given its focus on veterans. As Ziober accurately observes, the Supreme Court and this court have repeatedly affirmed the principle that statutes concerning federal reemployment rights for military members are "to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *see also Ala. Power Co. v. Davis*, 431 U.S. 581, 584 (1977); *Imel v. Laborers Pension Tr. Fund for N. Cal.*, 904 F.2d 1327, 1331–32 (9th Cir. 1990). We have also liberally construed a veterans reemployment statute to provide federal court jurisdiction over a claim. *Imel*, 904 F.2d at 1331–32. The principle of liberal construction, however, is designed to ensure that veterans may take full advantage of the substantive rights and protections provided by a statute. *See Ala. Power*, 431 U.S. at 585–87. Yet, as previously discussed, arbitration agreements like the one at issue in this case operate like forum selection clauses that do not require a party to give up any "substantive rights afforded by the statute." *Mitsubishi*, 473 U.S. at 628. Further, the enforcement of an arbitration agreement does not undermine the "social policies" underlying a given statute. *Gilmer*,

500 U.S. at 27–28. Instead, arbitration "can further" the same "broader social purposes" that litigation seeks to promote. *Id.* at 28.

Consistent with the other circuits to have considered the question, we therefore conclude that the plain text of USERRA does not preclude the compelled arbitration of disputes arising under its provisions. *See Garrett*, 449 F.3d at 677 (concluding that "[i]t is not evident from the statutory language that Congress intended to preclude arbitration by simply granting the possibility of a federal judicial forum"); *Landis*, 537 F.3d at 562 (observing that nothing in USERRA's text indicates that Congress chose to exempt the statute "from the policy favoring arbitration"); *see also Bodine*, 2016 WL 4056031, at \*5 (affirming a district court's order compelling arbitration of USERRA claims after severing from the arbitration agreement terms that violated the statute)**[2]**.

### B.

Even if we were to conclude that USERRA's text was ambiguous on the question, the limited legislative history cited by Ziober also does not satisfy his burden "to show that Congress intended to preclude a waiver of a judicial forum." *Gilmer*, 500 U.S. at 26. Ziober relies largely on a paragraph in a House Committee Report concerning the scope of § 4302(b). The paragraph states:

---

**[2]** The parties in *Bodine* "expressly agree[d] that USERRA claims are arbitrable," and limited their argument to the enforceability of the specific arbitration agreement at issue. 2016 WL 4056031, at \*3

Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. *See Peel v. Florida Department of Transportation*, 600 F.2d 1070 (5th Cir. 1979); *Cronin v. Police Dept. of City of New York*, 675 F. Supp. 847 (S.D. N.Y. 1987) and *Fishgold*, supra, 328 U.S. at 285, which provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. *See McKinney v. Missouri–K-T R.Co.*, 357 U.S. 265, 270 (1958); *Beckley v. Lipe-Rollway Corp.*, 448 F. Supp. 563, 567 (N.D.N.Y. 1978). It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. *See Kidder v. Eastern Airlines, Inc.*, 469 F. Supp. 1060, 1064–65 (S.D. Fla. 1978).

H.R. Rep. No. 103-65(I), at 20 (1993).

The passage, however, is consistent with our analysis of § 4302(b)'s express prohibition on the creation of "additional prerequisites" for the vindication of substantive rights under the statute. As the legislative history confirms, Congress's concern was with contractual agreements that forced an

employee to take an additional step (i.e., exhausting contractual grievance procedures) before bringing suit. That concern, however, does not reach individual agreements to arbitrate like the one at issue in this case, because such agreements do not require a plaintiff to take any additional steps before seeking to vindicate his or her rights in an arbitral forum. *See Garrett*, 449 F.3d at 680 (remarking that the cited legislative history "strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and individual employee"); *Landis*, 537 F.3d at 562–63.

The legislative history's citation to *McKinney v. Missouri-Kansas-Texas Railroad Co.* confirms that reading. The Supreme Court in *McKinney* considered a USERRA predecessor statute and held that a collective bargaining agreement could not require an employee to "exhaust other avenues of relief" before filing suit. 357 U.S. 265, 270 (1958). *McKinney*, however, did not address arbitration agreements that operate similar to forum selection clauses like the one at issue in this case. And as the Supreme Court has since made plain, the act of bringing a claim in arbitration allows a plaintiff to vindicate his or her substantive statutory rights to the same extent as filing a lawsuit in federal court. *See Gilmer*, 500 U.S. at 30 (rejecting the argument that arbitration is a "method of weakening the protections afforded in the substantive law to would-be complainants").

We therefore conclude that Ziober has failed to establish that the legislative history evinces Congress's intent to

prevent the enforcement of the arbitration agreement he signed.**³**

### IV.

We acknowledge the possibility that Congress did not want "members of our armed forces to submit to binding, coercive arbitration agreements." *Landis*, 537 F.3d at 564 (Cole, J., concurring). That intention, however, is not expressed in the statute itself, or in the legislative history. We therefore affirm the district court's order compelling arbitration and dismissing Ziober's complaint.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring:

I join the court's opinion, but I have doubts about whether we are reaching the right result.

A strong argument can be made that the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) contains a "contrary congressional command" overriding the Federal Arbitration Act's pro-arbitration

---

**³** Even if the House Committee Report more directly addressed individual arbitration agreements, no similar language appears in the relevant Senate Report, or any other legislative history cited by the parties. *See* S. Rep. No. 103-158, at 41 (1993). We agree with the Fifth Circuit that "[s]uch a scant record, unless explicitly and on point, hardly proves Congress's intention toward all cases involving arbitration." *Garrett*, 449 F.3d at 679.

mandate. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012). USERRA contains a provision that renders unenforceable any contract or agreement that "reduces, limits, or eliminates in any manner any right . . . provided by this chapter." 38 U.S.C. § 4302(b). Kevin Ziober's contract with his employer requires him to submit USERRA claims to final and binding arbitration. That contract certainly "limits"—and for all practical purposes "eliminates"—his right to litigate those claims in court. So the threshold question is whether USERRA confers on servicemembers the right to litigate USERRA claims in court.

The statute seems to confer such a right. Section 4323 authorizes servicemembers to "commence an action for relief" against a private employer, and it says, as relevant here, "[i]n the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323(a)(3), (b)(3). I'm not sure what additional language would be necessary to create a right to bring an action in court. If USERRA confers the right to a judicial forum, then § 4302(b) arguably renders invalid any pre-dispute waiver of that right through an agreement to submit USERRA claims to arbitration.

*CompuCredit* may seem controlling at first glance, but that case is not on all fours with this one. The statute at issue there, the Credit Repair Organizations Act, included a non-waiver provision that invalidated a consumer's waiver of any of the rights conferred by the statute, but the Supreme Court held that the statute did *not* confer the right to bring an action in court. *CompuCredit*, 132 S. Ct. at 669–70. The other statutes to which the Court referred in *CompuCredit*—the Age Discrimination in Employment Act, the Racketeer Influenced and Corrupt Organizations Act, and the Clayton

Act—all involved the reverse situation:    Each statute
conferred the right to bring an action in court, but each lacked
a non-waiver provision.  *See id.* at 670–71.  USERRA is
different because it contains both a non-waiver provision
(§ 4302(b)) and a provision conferring the right to bring an
action in court.

I concede, though, that the proper interpretation of
§ 4302(b) is open to debate.    On the one hand, the
Department of Labor, the agency charged with administering
USERRA, has read § 4302(b) as including "a prohibition
against the waiver in an arbitration agreement of an
employee's right to bring a USERRA suit in Federal court."
70 Fed. Reg. 75246, 75257 (Dec. 19, 2005).  That reading is
consistent with a long line of authority holding that
legislation benefitting servicemembers is to be liberally
construed in their favor.    *See, e.g.*, *Henderson ex rel.
Henderson v. Shinseki*, 562 U.S. 428, 441 (2011); *Fishgold v.
Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).
On the other hand, § 4302(b) is general in scope; it does not
explicitly address waiver of the right to a judicial forum.  So
there is room to argue that Congress intended to preclude
only the waiver of substantive rights conferred by the statute,
not the waiver of procedural rights such as the right to bring
an action in court.  Nothing in the legislative history of
USERRA definitively resolves this ambiguity.

With reasonable arguments to be made on both sides, I
don't think it's prudent for us to create a circuit split by
reversing the district court's ruling, particularly given the
ease with which Congress can fix this problem.  If we and
other circuits have misinterpreted the scope of § 4302(b),
Congress can amend the statute to make clear that it does
render pre-dispute agreements to arbitrate USERRA claims

unenforceable.  *See Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 565 (6th Cir. 2008) (Cole, J., concurring). Indeed, at least one amendment has been proposed recently that would do just that. *See* 162 Cong. Rec. S3205 (daily ed. May 25, 2016) (proposed amendment 4180 to Senate Bill 2943).  If we have erred by construing § 4302(b) too narrowly, Congress will surely let us know.

| 9th Circuit Case Number(s) | 14-56374 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) November 4, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | / s / Peter Romer-Friedman

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)